UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOWARD A. PETERS, III, and
R. BEVERLY PETERS,

    Plaintiffs,

v.                                          Case No: 8:20-cv-2080-KKM-AAS

CHEVAL GOLF AND ATHLETIC
CLUB, LLC, and LKJ MANAGEMENT
SERVICES, LLC,

    Defendants.
_____

## ORDER

Howard A. Peters, III, and his wife R. Beverly Peters, sued Cheval Golf and Athletic Club, LLC, and LKJ Management Services, LLC, bringing claims of racial discrimination in violation of Title II of the Civil Rights Act, breach of contract, and intentional infliction of emotional distress (IIED). Cheval moved for partial summary judgment against the Peters, contending that the Court should enter judgment against the Peters' Title II claim and their IIED claim and should grant summary judgment against Howard Peters on the breach of contract claim. The Court, construing the motion for summary judgment against the Title II claim as a motion to dismiss, granted the motion and dismissed the Peters' Title II claim against Cheval because the Peters failed to satisfy

a condition precedent to bringing their claim under Title II. The Court deferred deciding the Peters' motion as to the remaining state claims. But the Court noted that the Peters' failure to satisfy the condition precedent before bringing their Title II claim against Cheval likely indicated that they failed to satisfy the condition precedent before bringing their Title II claim against LKJ. The Court thus directed the parties to brief why the Court should not dismiss the Title II claim against LKJ.

The Peters responded and contend that LKJ is situated differently from Cheval in that they provided notice to the relevant state agency at least thirty days before serving LKJ's counsel with notice of the Amended Complaint, which added LKJ as a defendant. Thus, they argue that the Court should not dismiss the Title II claim against LKJ. But their arguments fail to show how they satisfied the requisite condition precedent before bringing their Title II claim against LKJ or why such a failure does not require dismissal of their claim. The Court thus dismisses without prejudice the Peters Title II claim against LKJ.

Because the Court dismisses the only federal claim before it, it declines to exercise supplemental jurisdiction over the Peters' state law claims and dismisses those claims. As a result, the Court denies without prejudice Cheval's motion for summary judgment on the Peters' state law claims.

I. BACKGROUND

The Court already recounted the undisputed facts in its first order dismissing without prejudice the Title II claim against Cheval and will not unnecessarily repeat those same facts here. (Doc. 80.) Of relevance though is that LKJ is a subsequent owner of the club, having received title to it from Cheval. (Docs. 57 at 2; 57-1.)

On September 3, 2020, Howard and Beverly Peters filed this action against Cheval. (Doc. 1.) The Peters alleged that "[a]ny and all conditions precedent to bringing the[ir] claims . . . were satisfied or waived." (Doc. 1 at 5.) The Peters claimed that Cheval discriminated against them based on race and sought damages and an injunction under Title II of the Civil Rights Act of 1964. (Doc. 1 at 5–6.) They also claimed that Cheval breached its contract with the Peters by "unilaterally terminating the Agreement." (*Id.* at 6.) And they claimed that Cheval intentionally inflicted emotional distress on Halton (the Peters' son) and the Peters. (*Id.* at 6–7.) Cheval answered on November 6, 2020, and on September 13 and 14, 2021, the Peters notified the Florida Commission on Human Relations of Cheval's alleged discrimination. (Docs. 19; 78-4; 78-3.)

On September 24, 2021, the Court granted the Peters' motion to file the Amended Complaint to add LKJ, the present owner of Cheval, as a defendant. (Doc. 64.) The Court required the Peters file their Amended Complaint no later than October 1, 2021. (*Id.*) The Peters filed the Amended Complaint on September 30, 2021, and sent LKJ a request to waive service on October 15, 2021. (Docs. 65, 77.) Cheval and LKJ filed a joint answer to

3

the Amended Complaint, and LKJ specifically raised as an affirmative defense that the Peters failed to satisfy "all notice requirements." (Doc. 79 at 9.)

Cheval moved for summary judgment against the Peters' Title II claim and their IIED claim and moved for partial summary judgment on their breach of contract claim. (Doc. 75.) The Court construed the motion for summary judgment against the Peters' Title II claim as a motion to dismiss and, treating it like a motion to dismiss for lack of jurisdiction, dismissed the claim without prejudice because the Peters failed to satisfy a statutorily required condition precedent. (Doc. 80.) The Court directed the parties to show why the Court should not dismiss the Peters' Title II claim against LKJ for the same reason. (Doc. 80.) The Peters responded and the Court now addresses their arguments.

## II.  LEGAL STANDARD

A court may dismiss a plaintiff's claim on its own motion if the court gives the plaintiff "notice of its intent to dismiss and an opportunity to respond." *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (2015). Courts must treat a motion to dismiss for failure to exhaust or satisfy a condition precedent to suit as a jurisdictional defect and address the failure using the "rules and practices applicable to" a Rule 12(b)(1) motion. *See Bryant v. Rich*, 530 F.3d 1368, 1374–76 (11th Cir. 2008) (quotation omitted); *see also Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424–25 (11th Cir. 2010) (per curiam) (extending *Bryant* to Title VII cases). And courts are "obligated to inquire into

4

subject matter jurisdiction *sua sponte* whenever it may be lacking." *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264 (11th Cir. 2021) (quotation omitted).

A motion under Rule 12(b)(1) may either be a "facial" or "factual" attack on a court's jurisdiction to hear the case. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990); *see also Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1022–23 (11th Cir. 2021) (contrasting facial and factual attacks on jurisdiction). A facial attack requires the Court look only to the pleadings to determine if the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (quotation omitted). A factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (quotation omitted). A factual attack authorizes a court to "proceed as it never could under 12(b)(6)" or Rule 56 because "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)). If a court finds it lacks jurisdiction, it is "without power to enter judgment . . . and must dismiss the case." *Hakki*, 7 F.4th at 1023.

5

## III. ANALYSIS

The Court dismissed the Peters' Title II claim against Cheval because the Peters failed to give timely notice to the Florida Commission on Human Relations of the acts by Cheval which the Peters alleged violated 42 U.S.C. § 2000a-3. (Doc. 80 at 6.) The Court held that the undisputed facts showed that the Peters did not notify the Florida Commission before filing their Complaint against Cheval and that dismissal without prejudice was warranted by the failure. (*Id.* at 13–14.) The Court rejected the Peters' arguments against dismissal, concluding that Cheval did not waive its presuit-notice argument, that the motion was timely, and that the Peters could not cure their failure. (*Id.* at 7–13.) The Court observed that because the Title II claim against LKJ appeared to be identical to the claim raised against Cheval, the reasons for dismissing the claim against Cheval likely required dismissal of the claim against LKJ. (*Id.* at 14–15.) The Court thus directed the parties to brief why the Court should not likewise "dismiss the Title II claim against LKJ." (*Id.* at 15.)

The Court gave the Peters notice of its intent to dismiss their Title II claim against LKJ. Now, operating according to the "rules and practices" applicable to a Rule 12(b)(1) motion, the Court determines that the Peters fail to satisfy a condition precedent to bringing their Title II claim against LKJ and dismisses the claim without prejudice. *Bryant*, 530 F.3d at 1376 (quotation omitted).

6

### A. The Peters Failed to Comply with § 2000a-3(c)'s Notice Provision as to LKJ

The Peters fail to show that they satisfied the presuit-notice requirement as to LKJ that necessitated dismissal of their claim against Cheval.

Under § 2000a-3(c), "no civil action may be brought under subsection (a) before the expiration of thirty days after" the plaintiff notifies "the appropriate State or local authority" of the defendant's actions which allegedly violated §§ 2000a, 2000a-1, or 2000a-2. Here, the Peters seek an injunction under subsection (a) for violations of §§ 2000a and 2000a-1 and the alleged violations took place in Florida, so the Peters were required by § 2000a-3(c) to notify the appropriate Florida authority and wait thirty days before bringing this action. The Peters contend that LKJ denied them access to a place of public accommodation based on their race, allegations which "the Florida Commission on Human Relations is charged with investigating" under the Florida Civil Rights Act. *Strober v. Payless Rental Car*, 701 F. App'x 911, 913 n.3 (11th Cir. 2017) (per curiam). Thus § 2000a-3(c) required the Peters to notify the Florida Commission on Human Relations thirty days before bringing a lawsuit under § 2000a-3(a). Failure to give such notice before filing suit cannot be cured by giving notice after filing suit. *See Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam); (Doc. 80 at 12–13).

As described in this Court's previous Order, the Peters do not dispute that they failed to give notice before filing the original Complaint in this action. (Doc. 80 at 7.) Nor

7

do they raise any of the arguments the Court rejected in its previous Order. (*Id.*) Instead, the Peters contend that they satisfied the presuit-notice requirement of § 2000a-3(c) because they notified the Florida Commission more than thirty days before asking LKJ to waive service of process. (Doc. 81 at 1–2.) Specifically, they note that they informed the Florida Commission on September 14, 2021, and then waited until October 15, 2021, to serve LKJ's counsel with a request for waiver of service. And they note that, prior to October 15, 2021, LKJ had not "incur[red] any obligation to defend itself in the action." (*Id.* at 2.)

Their emphasis on the date of service is misplaced. Title II requires the plaintiff to notify the relevant state or local authority thirty days before an action may be "brought." § 2000a-3(c). The date of service—or the date on which LKJ became obligated to defend itself—is merely one of many dates on which the Peters "continu[ed]" the action. *See Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000). The material date for § 2000a-3(c) is when the case is "brought," which is the date the action is commenced. *See id.* (equating "brought" with the "filing or commencement of a lawsuit"); *see also Goldenberg v. Murphy*, 108 U.S. 162, 163 (1883) ("A suit is brought when in law it is commenced . . . ."). A case is commenced, according to the "ordinary sense" of the word, when the complaint is filed. *See Unexcelled Chem. Corp. v. United States*, 345 U.S. 59, 66 (1953) (concluding that a statute defining commencement as the date when the complaint is filed used

8

"commence" in its "ordinary sense"); *Commencement of an Action*, *Black's Law Dictionary* (11th ed. 2019) ("The time at which judicial or administrative proceedings begin, typically with the filing of a formal complaint."). Whether the Peters "brought" this action against LKJ for purposes of § 2000a-3(c) when they filed their original Complaint on September 3, 2020, or when they first named LKJ as a defendant in filing their Amended Complaint on September 30, 2021, they failed to wait thirty days after giving the Florida Commission notice on September 14, 2021 to bring suit. (Docs. 1, 65.)

### B. Dismissal of the Peters' Title II Claim Against LKJ Is Not "Inequitable"

The Peters argue that "[i]t would be inequitable for the Court to dismiss the Title II claim against LKJ when [the Peters] could not have complied with both the Court's order and the Title II notice requirement." (Doc. 81 at 2–3.) Specifically, they note that this Court required they file their Amended Complaint including LKJ as a defendant no later than October 1, 2021, which precluded them from filing their Amended Complaint after waiting thirty days from the date they notified the Florida Commission. But they fail to show how dismissal would be inequitable.

To start, their entire inequity argument assumes that the date they "brought" the Title II claim against LKJ was September 30, 2021—the day they filed their Amended Complaint and named LKJ as a defendant. The Court need not resolve whether the date they "brought" the Title II claim against LKJ was the date they filed the initial Complaint

9

or the date they filed their Amended Complaint. If the Peters "brought" the claim on the former date, the Court's deadline for the Peters to file their Amended Complaint cannot have made it more difficult for them to comply with § 2000a-3(c)'s notice requirement. And if they "brought" the claim on the latter date, any difficulty complying with § 2000a-3(c) as to LKJ was a result of their own inaction. The Peters decided to wait to notify the Florida Commission until after they moved to add LKJ as a party in this action, on September 8, 2021. The Peters' difficulty in meeting both the Court's deadline and the § 2000a-3(c) requirement is due primarily to the Peters failing to provide earlier notice to the Florida Commission or to wait longer to move to add LKJ, both actions within their control, not the Court's. Moreover, the Peters never informed the Court in their motion requesting leave to amend that they needed additional time to file an Amended Complaint to comply with presuit notice and they cannot now impart their failures onto the Court, which granted their requested relief to file an Amended Complaint within two days of it ripening. Thus, the Peters do not explain how a dismissal caused by their own failure is "inequitable."

### C. Section 2000a–3(c) Conclusion

The Peters brought a Title II claim against LKJ but failed to comply with § 2000a-3(c)'s notice requirement. The Peters fail to show why the Court should not dismiss their Title II claim against LKJ. Because the Court does not reach the merits of the Peters' Title

10

II claim, the Court dismisses that claim without prejudice. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1094 n. 7 (11th Cir. 1996); *see also Bryant*, 530 F.3d at 1375 n.11 (noting that a dismissal for failure-to-exhaust is generally without prejudice when there is no indication that a plaintiff is purposely evading administrative remedies and when those remedies are still available); *Fourth Est. Pub. Benefit Corp.*, 856 F.3d at 1342 (affirming dismissal without prejudice where a plaintiff failed to satisfy a precondition to suit), *aff'd*, 139 S. Ct. at 881; *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 524 (5th Cir. 1980) (concluding that presuit conditions under Title VII "do not touch the merits"); *Poor & Minority Just. Ass'n v. Chief Judge, Tenth Jud. Cir. Ct. of Fla.*, No. 8:19-cv-2889-T-02TGW, 2020 WL 3286140, at *3 (M.D. Fla. Mar. 27, 2020) (Jung, J.) (dismissing without prejudice a Title II claim that failed to satisfy § 2000a-3(c)).

## IV.   SUPPLEMENTAL JURISDICTION

When the Peters filed their Complaint, they alleged a violation of §§ 2000a and 2000a-1, giving this Court federal question jurisdiction to adjudicate their claim. *See* 28 U.S.C. § 1331. They also brought two state claims, over which the Court elected to exercise supplemental jurisdiction at that time. *See* 28 U.S.C. § 1367. But now that the Court has resolved the sole federal question by dismissing Count I, the Court reconsiders its exercise of supplemental jurisdiction over the remaining state law claims. Federal law requires a two-step process to determine whether to decline supplemental jurisdiction: first,

the district court must confirm that it has discretion to decline; and second, it must consider whether prudential factors counsel against dismissal of the supplemental claims. Of course, where the only federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should ordinarily decline to exercise supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

A district court may decline supplemental jurisdiction when one of four statutory conditions is met:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Because the Court has granted summary judgment for Defendants on Plaintiffs' only federal claim, § 1367(c)(3) authorizes the Court to decline supplemental jurisdiction over the remaining state claims. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims.").

The Court must next consider whether "judicial economy, convenience, fairness, and comity" counsel dismissal of the remaining state claims. *Ameritox, Ltd. v.*

12

*Millenium Lab'ys*, 803 F.3d 518, 532 (11th Cir. 2015) (quotation omitted) (referencing the factors provided in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) and *Cohill*, 484 U.S. at 350). "[I]n the usual case," once a district court has disposed of all the federal claims, "the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. That is the case here.

First, judicial economy would be assisted by declining jurisdiction as the federal and state claims all center on many of the same facts. For example, both the Peters' Title II claim and their IIED claim depend on them proving that Cheval and LKJ racially discriminated against them. (*Compare* Doc. 65 at 6 ("The Club . . . further discriminated against Plaintiffs on the basis of race, as prohibited by [§ 2000a-1]."), *with id.* at 8 ("The Club's conduct was outrageous because it was motivated by racial reasons.").) Because the Court dismisses without prejudice the Peters' federal claim, they may seek to refile it. In which case, the most efficient use of judicial resources is to try all those claims together. If the Peters refile their claims in either federal or state court, all the claims can quickly be presented for adjudication once there. *Cf. Jacoboni v. KPMG LLP*, 314 F. Supp. 2d 1172, 1181 (M.D. Fla. 2004) (Conway, J.) (noting that the case was "in sufficient shape that it could be set for trial in state court immediately after the pleadings close; this would not present a lengthy delay").

13

Second, convenience to the parties does not favor retaining or declining jurisdiction. Venue in state court, based upon the parties' residence and home ownership, appears to be in Hillsborough County. (Doc. 65 at 1–2.) Thus, there is no reason why a state court would not be just as convenient as the federal court.

Third, dismissal without prejudice is not unfair to the parties. The Peters allege that the IIED and breach of contract took place in November of 2019, leaving plenty of time to refile their claims before the statute of limitations runs on those claims. *See W.D. v. Archdiocese of Miami, Inc.*, 197 So. 3d 584, 587 (Fla. 4th DCA 2016) (noting that Florida law "provide[s] a four year statute of limitations for negligence, intentional infliction of emotional distress"); section 95.11(2)(b), Fla. Stat. (requiring legal or equitable actions on a contract "founded on a written instrument" be brought within five years); 95.11(3)(k), Fla. Stat. (requiring legal or equitable actions on a contract "not founded on a written instrument" be brought within four years). And if the parties prefer federal court to state court, that does not render declining supplemental jurisdiction "unfair." *See Ameritox*, 803 F.3d at 539 ("Every litigant who brings supplemental claims in court knowingly risks the dismissal of those claims."). As for litigation costs, "[b]oth parties are free to use evidence obtained during discovery to pursue their state-law claims in a proper forum." *Id.*

And fourth, comity with the state courts weighs strongly in favor of declining supplemental jurisdiction over the state claims. In response to Cheval's Motion for

14

Summary Judgment on the Peters' IIED claim, the Peters argue that Florida law for determining what constitutes a sufficient injury for an IIED claim is wrong and should change. (Doc. 78 at 20.) Of course, this Court cannot alter Florida law. But, if the Florida Supreme Court had not directly addressed the issue and if there was reason to think that court would rule differently, this Court would be bound to predict how it would rule if presented with the question and the Peters' arguments. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Although *Erie* requires such prediction when the question is before a federal court, courts should avoid predicting state law when a state court could decide in the first instance whether to adopt those changes. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Francois v. Gulf Coast Transp., Inc.*, No. 8:16-cv-1061-T-24, 2017 WL 2226647, at *3–4 (M.D. Fla. May 22, 2017) (Bucklew, J.) (declining supplemental jurisdiction for a similar reason).

The Court declines to exercise supplemental jurisdiction over the Peters' Florida law claims and dismisses those claims without prejudice.

V.   **CONCLUSION**

The Court already dismissed the Peters' Title II claim against Cheval and now dismisses their Title II claim against LKJ. Because the Court dismisses the only federal

15

claim remaining before it, the Court declines to exercise supplemental jurisdiction over the Peters' Florida law claims.

Accordingly, the following is **ORDERED:**

1. The Court **DISMISSES WITHOUT PREJUDICE** the Peters' Title II claim (Count I) as to LKJ.

2. The Court **DISMISSES WITHOUT PREJUDICE** the Peters Breach of Contract (Count II) and Intentional Infliction of Emotional Distress (Count III) claims because the Court declines to exercise supplemental jurisdiction over them.

3. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state claims, it **DENIES WITHOUT PREJUDICE** Cheval's motion for partial summary judgment on Count II and for summary judgment on Count III. (Doc. 75.)

4. The Clerk is directed to enter judgment in Defendants' favor, to terminate any other pending motions and deadlines, and to close this case.

**ORDERED** in Tampa, Florida, on January 19, 2021.

Kathryn Kimball Mizelle
United States District Judge

16